IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAPTAIN CHEYNE PARHAM, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1105 |
| | § | |
| HILLARY CLINTON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

The plaintiffs have filed a complaint seeking a declaratory judgment regarding their allegation that officials employed by the United States Department of State have violated their rights. The defendants have filed a motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 5). The plaintiffs have filed numerous responses and other submissions. (Docs. # 6, # 7, # 8, # 12, # 13, # 14, # 19, # 20, # 21, # 22, # 23). The plaintiffs have also filed two motions for injunctive relief and they request an evidentiary hearing. (Docs. # 10, # 24). After reviewing all of the pleadings, and the applicable law, the Court grants the defendants' motion and dismisses this case for reasons set forth briefly below.

## I.    BACKGROUND

The plaintiffs in this case are Captain Cheyne Parham ("Captain Parham") and his wife, Mary Joy Pingca Parham ("Mary Joy"). Captain Parham has filed suit individually and as "next friend" of twin girls, identified as "M.E. Parham and E.J. Parham." The defendants

are Hilary Clinton, in her official capacity as Secretary of the State Department for the United States, and two State Department employees.  In particular, the plaintiffs sue Edward Betancourt in his official capacity as Director of the State Department's Office of Policy Review and Interagency Liaison, Overseas Citizens Services, Bureau of Consular Affairs in Washington, D.C., and Lisa Mooty in her individual and official capacity as a consular officer at the United States Embassy for the Philippines in Manila.

This case stems from the alleged refusal by consular officials at the United States Embassy in the Philippines to issue a Consular Report of Birth Abroad for M.E. and E.J. to establish their United States citizenship for purposes of obtaining a passport to enter the United States.  The plaintiffs complain that the defendants have needlessly required DNA testing to establish that Captain Parham is M.E. and E.J.'s father.  The facts articulated in support of the complaint are summarized below.

Captain Parham is a commissioned officer in the United States Army.  He is currently stationed at Fort Knox in Kentucky.[1]  Mary Joy, M.E., and E.J., currently reside in the Philippines, along with Mary Joy's four-year-old son from a previous relationship. According to the complaint and the attached exhibits, Captain Parham met Mary Joy on September 22, 2007, while he was stationed overseas at Camp Casey/Hovey in South Korea. Mary Joy, a native of the Philippines, was employed as "a waitress" at a local club at that time.  One month later, Captain Parham proposed marriage.  Mary Joy returned to the

---

[1]     According to the complaint, Captain Parham's "permanent residence and home of record . . . is in the Southern District of Texas."  (Doc. # 1, ¶ 6).

Philippines in March of 2008.  While on leave from the military, Captain Parham joined her in the Philippines and the two were married in Davao City, Davao, on April 12, 2008.  (Doc. # 1, Exhibit B).  On June 3, 2008, Captain Parham returned to the United States upon the completion of his tour of duty in South Korea.  Mary Joy did not accompany him because she was pregnant at that time and reportedly unable to travel.  On August 28, 2008, M.E. and E.J. were born at a Davao City hospital.  Captain Parham is listed as the father on each child's birth certificate.  (Doc. # 1, Exhibits C, D).

So that she and her children could join Captain Parham at Fort Knox in Kentucky, Mary Joy reportedly applied for a "visitor visa" for herself and for her four-year-old son. Instead of requesting visitor visas for M.E. and E.J., however, Mary Joy apparently decided to apply for passports for the twin girls because, as children of a United States citizen, a valid passport would obviate the need for a visa or other temporary travel document.  To obtain the necessary passports, M.E. and E.J. required a "Consular Report of Birth Abroad" to establish their United States citizenship.[2]  On December 1, 2008, Captain Parham filed two applications for a Consular Report of Birth Abroad (Form DS-2029s) to establish his paternity and the twins' entitlement to United States citizenship.  Sometime thereafter, Mary Joy applied for M.E. and E.J.'s passports on March 5, 2009, at the United States Embassy for the Philippines in Manila.

---

[2]     "A Consular Report of Birth Abroad is 'a formal document certifying the acquisition of U.S. citizenship at birth of a person born abroad.'" *Zivotofsky v. Secretary of State*, 444 F.3d 614, 615 (D.C. Cir. 2006) (quoting 7 U.S. Department of State, Foreign Affairs Manual ("FAM") § 1441(a)).

The applications filed by Captain Parham and Mary Joy did not meet with automatic or immediate approval. Embassy officials in Manila requested additional information about the twins and their eligibility for United States citizenship after noting that Captain Parham and Mary Joy were not married when M.E. and E.J. were conceived. According to an exhibit attached to the complaint, Mary Joy told Lisa Mooty during an interview that she was working as "an entertainer" in September of 2007, when she met Captain Parham in South Korea. Mooty reportedly inferred that Mary Joy worked at a "sexually oriented business" and she allegedly expressed doubt about Mary Joy's fidelity to Captain Parham as well as M.E. and E.J.'s paternity. To resolve any question about M.E. and E.J.'s paternity, Mooty requested a DNA test and provided Mary Joy with information about available DNA testing procedures.

The plaintiffs deem the request for DNA evidence "unconscionable" and insulting. According to the plaintiffs, DNA testing at a lab approved by the State Department would take approximately four months, which is too long in the plaintiffs' view. The plaintiffs contend that the testing would be needlessly expensive and "impracticable." Rather than pursue DNA testing, Captain Parham filed suit in the County Court at Law of Waller County, Texas, to establish a "father-child relationship" with M.E. and E.J. under Texas law. On March 13, 2009, the state court found that M.E. and E.J. were "born in wedlock" and that "all requirements of filiation" were satisfied. Therefore, the state court issued an order declaring that M.E. and E.J. are Captain Parham's "natural born children[.]" (Doc. # 1, Exhibit E).

Captain Parham forwarded a copy of the state court's order to Betancourt at the Bureau of Consular Affairs in Washington, D.C. According to the complaint, Betancourt replied with a letter suggesting that Captain Parham "voluntarily submit to a DNA test for an expeditious resolution to the request for [a] Consular Report of Birth Abroad." That letter reportedly advised the plaintiffs that proof of a "biological relationship" between the United States citizen and the children was required by law and that DNA tests were necessary to establish that relationship under the governing legal standard. Betancourt explained that, under the applicable regulations and guidelines found in the United States Department of State Foreign Affairs Manual, the State Department could require any evidence that it deemed necessary to establish United States citizenship. In a second letter, Betancourt explained that the state court's adjudication of parental rights was not binding on the federal government for the purpose of issuing the requisite Consular Report of Birth Abroad and he repeated the request for DNA tests to establish the necessary biological relationship.

To date, the plaintiffs have not submitted DNA evidence for purposes establishing paternity and their requests for Consular Reports of Birth Abroad for M.E. and E.J. remain pending along with their passport applications. The plaintiffs insist that the state court judgment establishing Captain Parham's parental rights is entitled to "full faith and credit" for purposes of obtaining citizenship. The plaintiffs contend, therefore, that DNA testing is unnecessary and that the defendants have unlawfully refused to issue a Consular Report of Birth Abroad for M.E. and E.J. in violation of their civil rights under 42 U.S.C. § 1983. In

addition, the plaintiffs complain that Mooty defamed Mary Joy by calling her "a prostitute" and recklessly accusing her of engaging in a crime of moral turpitude.

The plaintiffs seek actual and exemplary damages for emotional harm, mental anguish, loss of companionship, and loss of consortium, among other things. Primarily, however, the plaintiffs seek a declaratory judgment stating that "parentage has been established by res judicata, or in the alternative, by a preponderance [of the evidence] based on the information that has been submitted with the Application for Consular Report of Birth Abroad." The plaintiffs also seek injunctive relief in the form of a court order directing the State Department to issue a Consular Report of Birth Abroad and passports "recognizing the citizenship of E.J. Parham and M.E. Parham at birth" as well as visas for Mary Joy and her son without delay.[3]

The defendants have filed a motion to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alternatively, the defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6). The plaintiffs have filed more than one response and they have supplemented the record with exhibits as well as other pleadings. The plaintiffs have also filed more than one motion for a preliminary injunction and they request an evidentiary

---

[3]    The request for visas is not clearly included in the original complaint. Likewise, as the defendants correctly note, Mary Joy's son is not a party. Because the Court lacks jurisdiction over the complaint concerning the passport dispute, the Court does not address these additional allegations.

hearing on the merits of their claims.   The parties' contentions are discussed below under the governing legal standards.

## II.  <u>STANDARD OF REVIEW</u>

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over those matters specifically designated by the United States Constitution or Congress.  *See Johnson v. United States*, 460 F.3d 616, 621 n.6 (5th Cir. 2006) (citations omitted).  The existence of subject matter jurisdiction may be challenged at any stage in the litigation and may be raised by the district court on its own motion.  *See Nguyen v. District Director, Bureau of Immigration*, 400 F.3d 255, 260 (5th Cir. 2005) (citations omitted); *see also B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548 (5th Cir. Unit A 1981) (stating that "where a federal court proceeds in a matter without first establishing that the dispute is within the province of controversies assigned to it by the Constitution and statute, the federal court poaches upon the territory of a coordinate judicial system, and its decisions, opinions, and orders are of no effect").

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citations omitted).  When considering whether subject matter jurisdiction exists, the district court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Id.*  As the party seeking federal court review, the plaintiff bears the burden of demonstrating that jurisdiction

is proper.  *See Lara v. Trominski*, 216 F.3d 487, 491 (5th Cir. 2000) (citing *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)).

The defendants' motion to dismiss is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure, which asserts that the plaintiff's complaint fails to state a claim upon which relief can be granted.  Federal pleading rules require only "a short and plain statement of the claim" showing that the pleader is entitled to relief.  FED. R. CIV. P. 8(a).  As the Supreme Court has emphasized, "heightened fact pleading of specifics" is not required to state a claim for purposes of surviving a motion to dismiss under Rule 12(b)(6).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).  Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

When ruling on a motion to dismiss under Rule 12(b)(6), a reviewing court must accept as true all of the factual allegations contained in the complaint.  *See Twombly*, 550 U.S. 544, 127 S. Ct. at 1965 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  A court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).  To withstand a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. 544, 127

S. Ct. at 1965.  A complaint must be dismissed for failure to state a claim if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1974.

## III.   DISCUSSION

The plaintiffs emphasize that the primary purpose of this lawsuit is "to affirm the citizenship of two American children, born in wedlock to an American Citizen Soldier Father and alien Mother," who have been deprived of the right to enter the United States by the State Department.  (Doc. # 20).  The defendants argue that this Court lacks jurisdiction to issue declaratory relief of this nature.  Assuming that jurisdiction exists, the defendants argue that the plaintiffs have failed to state a valid claim.  The defendants argue further that this Court lacks jurisdiction over the plaintiffs' defamation claim against Lisa Mooty, which also fails as a matter of law.  These arguments are discussed separately below following a brief overview of the law governing acquisition of United States citizenship at birth by those born abroad.

### A.    Citizenship at Birth for Individuals Born Abroad

It is well established that there are "two sources of [United States] citizenship, and two only: birth and naturalization."  *United States v. Wong Kim Ark*, 169 U.S. 649, 702 (1898).  The Fourteenth Amendment to the United States Constitution declares that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States."  U.S. CONST. amend. XIV.  Thus, persons who are born in the United States acquire citizenship by birth automatically.  Persons born outside of the United States,

9

however, acquire citizenship by birth only as provided by Acts of Congress. *Wong Kim Ark*,

169 U.S. at 703; *see also Miller v. Albright*, 523 U.S. 420, 424 (1998).

By statute, a person who is born abroad automatically becomes a national and citizen

of the United States if both parents are United States citizens and at least one of the parents

has had a residence in the United States or one of its outlying possessions prior to the birth

of such person. 8 U.S.C. § 1401(c).  If one parent is not a United States citizen, however, a

person who is born abroad may still acquire United States citizenship if the other parent is

a United States citizen who has been physically present within the United States for a

sufficient length of time prior to the birth. *See* 8 U.S.C. § 1401(g).  Congress has delegated

the responsibility for administering and enforcing the law relating to nationality to the

Secretary of State, whose authority extends to "the determination of nationality of a person

not in the United States."  8 U.S.C. § 1104(a).  A person's "nationality" in this context is

defined to mean citizenship  22 C.F.R. § 50.1(d) (2009) (defining "national" to mean "a

citizen of the United States or a noncitizen owing permanent allegiance to the United

States").  Thus, the State Department is charged with determining claims to United States

citizenship of persons abroad when made through an application for a Consular Report of

Birth Abroad or a passport.  *See id*. at § 50.2.

Claims to United States citizenship for persons born abroad are made through an

application for registration or a passport, or through an application for a Consular Report of

Birth Abroad of a Citizen of the United States of America. 22 C.F.R. § 50.2. Determinations

of citizenship may be made abroad by a consular officer or a designated nationality examiner

who may approve or disapprove an application for registration or for a passport. *Id.* A Consular Report of Birth Abroad may only be issued by a consular officer," depending on whether a nationality examiner has given provisional approval, and such report will issue only if the consular officer is "satisfied that the claim to nationality has been established." *Id.* The applicant seeking a Consular Report of Birth Abroad must submit proof of the child's birth, identity, and citizenship in compliance with the requirements set forth in the regulations governing passports. *See id.* at § 50.5 (referencing 22 C.F.R. Part 51, Subpart C). Under this section, the applicant has the burden of proving that he or she is a United States citizen. *See id.* at § 51.40. The applicant must provide documentary evidence in support of a claim that he or she is a United States citizen. *Id.* at § 51.41. In addition to the requisite forms of documentary evidence, a State Department official may, as a matter of discretion, "require an applicant to provide *any evidence* that it deems necessary to establish that he or she is a [United States] citizen[.]" *Id.* at 51.45 (emphasis added)  A consular official "may issue" a Consular Report of Birth Abroad only upon application and the submission of "satisfactory proof of birth, identity and nationality[.]" *Id.* at § 50.7(a).

To assist consular officials with making determinations regarding applications for citizenship abroad, the United States Department of State provides guidelines in its Foreign Affairs Manual. The State Department's Foreign Affairs Manual deems proof of a "blood relationship" essential to establishing citizenship where a claim is made by a person born abroad:

> The laws on acquisition of United States citizenship through a parent have always contemplated the existence of a blood relationship between the child and the parent(s) through whom citizenship is claimed.  It is not enough that the child is presumed to be the issue of the parents' marriage by the laws of the jurisdiction where the child was born.  Absent a blood relationship between the child and parent on whose citizenship the child's own claim is based, United States citizenship is not acquired.  The burden of proving a claim to United States citizenship, including blood relationship and legal relationship, where applicable, is on the person making such claim.

7 U.S. Department of State, Foreign Affairs Manual § 1131.4-1(a).  Although children born in wedlock "are generally presumed to be the issue of that marriage," the presumption is not determinative in citizenship cases, where "an actual blood relationship to a United States citizen is required." *Id.* at § 1131.4-1(c).  In determining the existence of a blood relationship for persons born in wedlock, the State Department applies a preponderance-of-the-evidence standard, in which "evidence of blood relationship is of greater weight than the evidence to the contrary." *Id.* at § 1131.4-1(b)(1).  Where a child has been conceived out of wedlock, as M.E. and E.J. were in this instance, a consular official may investigate to determine the possibility of "paternity fraud." *Id.* at § 1131.5-3(a)(1).  To resolve doubts about paternity, a consular officer may request "blood or DNA testing." *Id.* at 1131.5-3(b)(4).

The plaintiffs in this case complain that DNA testing is not expressly authorized by statute and that the defendants' request for proof of paternity is unnecessary.  According to information supplied by the defendants, and the foregoing legal standards, consular officials are "required by law to note evidence of transmission, legitimation, and filiation." (Doc. # 5, Declaration of Edward A. Betancourt).  For this purpose, the State Department regularly requires DNA testing of children in cases such as the one involving Captain Parham, because

such testing "is standard practice worldwide in a case where the children were conceived before the date of marriage." (*Id.*).  The plaintiffs fail to show that this is not true.  To date, the plaintiffs have not complied with the request for DNA testing and the passport applications for M.E. and E.J. remain unadjudicated by the consulate or the State Department.  In light of this background, the plaintiffs' claims for declaratory, monetary, and injunctive relief are addressed below.

### B.    Plaintiffs' Claims for Declaratory Relief

Pointing to the Waller County judgment establishing Captain Parham's "father-child relationship" with the twins under Texas law, the plaintiffs request a declaration stating that M.E. and E.J. are Captain Parham's natural offspring and, therefore, United States citizens. In turn, they seek an injunction ordering the State Department to issue a Consular Report of Birth Abroad and to approve passports in compliance with such a finding.  The defendants argue, however, that the plaintiffs have failed to establish a valid basis for federal subject matter jurisdiction under the Declaratory Judgment Act.

As the defendants correctly note, the Declaratory Judgment Act authorizes relief only "[i]n a case of actual controversy" that is within a district court's jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.  It is well established that a plaintiff may not proceed under the Declaratory Judgment Act alone because it is not an independent source of jurisdiction.  *See, e.g., Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (holding that the Declaratory Judgment Act is not an independent source of federal jurisdiction).  "There must be an

13

independent basis of jurisdiction, under statutes equally applicable to actions for coercive relief, before a federal court may entertain a declaratory-judgment action." 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2766 (3d ed. 1998). Unless the plaintiffs' request for declaratory relief is tied to another cause of action within the jurisdiction of the federal court, it must be dismissed. *See Earnest v. Lowentritt*, 690 F.2d 1198, 1203 (5th Cir. 1982); *see also Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997) (observing that the Declaratory Judgment Act "does not confer subject matter jurisdiction on a federal court where none otherwise exists") (citations omitted). For reasons set forth below, the allegations in the plaintiffs' complaint do not establish a valid cause of action that is sufficient to invoke this Court's jurisdiction for purposes of obtaining declaratory relief.

### 1.     Civil Rights Claims

The plaintiffs complain that the defendants have violated 42 U.S.C. § 1983, by violating their constitutional rights. In that respect, the plaintiffs claim that the defendants have willfully deprived M.E. and E.J. Parham of the "right to citizenship," the right to assemble, and the right to associate with Captain Parham in violation of the First Amendment to the United States Constitution. The plaintiffs contend further that Captain Parham has been deprived of a liberty interest "in his family" in violation of the Fifth Amendment.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of the Constitution or of federal law, and must show that the violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005).  The defendants dispute that they are responsible for separating Captain Parham from his family, noting that they are free to apply for visas, which are available (where appropriate) to admit the spouse of a United States citizen and unmarried children under the age of twenty-one.  (Doc. # 5, at 8 n.3).  It is unclear whether the plaintiffs have applied for this type of visa.  The defendants maintain, more significantly, that the plaintiffs' complaint fails to articulate a valid claim under § 1983 because this statute affords a remedy against state actors only.

To state a claim under § 1983, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible."  *Lugar v. Edmundson Oil Co.*, 457 U.S. 922, 936 (1982).  This means that "the party charged with the deprivation must be a person who may fairly be said to be a state actor," that is, one who is in fact a state official, one who "has acted with or has obtained significant aid from state officials," or one whose "conduct is otherwise chargeable to the State."  *Id.*, 457 U.S. at 937.

It is undisputed that all of the defendants are federal officials.  Thus, § 1983 does not confer subject matter jurisdiction because this statute applies only to state actors, and not federal agencies or officials.  *See Resident Council of Allen Parkway Village v. U.S. Dep't of Housing & Urban Dev.*, 980 F.2d 1043,  1053 (5th Cir. 1993); *see also Izen v. Catalina*,

15

382 F.3d 566, 570 n.3 (5th Cir. 2004) (noting that a *Bivens* action is analogous to a civil

rights action under 42 U.S.C. § 1983, with the only difference being that § 1983 applies to

constitutional violations by state, rather than federal, officials); *Broadway v. Block*, 694 F.2d

979, 981 (5th Cir. 1982) (holding that federal officials, acting under color of federal law

rather than state law, are not subject to suit under § 1983).   Because the plaintiffs do not

allege that the defendants were acting under state law, they fail to articulate a valid cause of

action under 42 U.S.C. § 1983 or a valid basis for federal court jurisdiction.[4]


### 2.        Criminal Conspiracy to Violate Civil Rights

Alleging that their actions are tantamount to a criminal conspiracy, the plaintiffs

contend that the defendants have violated their civil rights under 18 U.S.C. § 242, which

makes it an offense to deprive a person of a right or privilege protected by the constitution

or the laws of the United States.   It is well established, however, that criminal statutes do not

provide a basis for liability in a civil action such as this one.   *See Hanna v. Home Ins. Co.*,

281 F.2d 298, 303 (5th Cir. 1960) ("The sections of Title 18 may be disregarded in this suit.

---

[4]        In *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), the Supreme
Court recognized an implied private cause of action for damages against federal officers
who, in an individual capacity, have allegedly violated a citizen's constitutional rights.   *See
Correctional Services Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (discussing *Bivens*).   The
plaintiffs have not included a *Bivens* claim in their complaint or requested leave to raise a
*Bivens* claim.   Because the plaintiffs are represented by counsel, their pleadings are not
entitled to the liberal construction ordinarily accorded to *pro se* litigants.   *See Beasley v.
McCotter*, 798 F.2d 116, 118 (5th Cir. 1986).   Even if the Court were to afford a liberal
construction or to allow an amendment, the only defendant who is sued in an individual
capacity is Lisa Mooty.   For reasons noted further below, any *Bivens* claim against Mooty
fails as a matter of law.

They are criminal in nature and provide no civil remedies."); *Gill v. State of Texas*, 153 F. App'x 261, 2005 WL 2868257 (5th Cir. 2005) (unpublished) (same).  Accordingly, these allegations do not state a claim upon which relief can be granted or a valid basis for subject matter jurisdiction.

### 3.    Federal Mandamus Statute

The complaint makes a fleeting reference to the federal mandamus statute found at 28 U.S.C. § 1361 as a potential basis for jurisdiction.[5]  (Doc. # 1, Complaint ¶ 3).  Historically, as well as under the present codification found in § 1361, the writ of mandamus has been considered a "'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. United States Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)); *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969) ("It is hornbook law that mandamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases."), *cert. denied*, 397 U.S. 941 (1970).  To obtain a writ of mandamus, a plaintiff must establish "(1) a clear right to the relief, (2) a clear duty by the respondent to do the act requested, and (3) the lack of any other adequate remedy."  *Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir. 1998) (citing *In re Stone*, 118 F.3d 1032, 1034 (5th Cir. 1997)).

---

[5]     The federal mandamus statute empowers a district court "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.

To ensure that mandamus remains an extraordinary remedy, the petitioner carries the burden of showing that his right to issuance of the writ is "clear and indisputable." *Miller v. French*, 530 U.S. 327, 339 (2000); *Mallard v. United States Dist. Court for Southern Dist. of Iowa*, 490 U.S. 296, 309 (1989). The plaintiffs make no effort to demonstrate that any of the above-referenced criteria are satisfied or to show a clear right to the relief sought. Moreover, as outlined above, determinations of nationality in connection with a Consular Report of Birth Abroad are a discretionary function. Absent a showing that they have complied with requests for DNA testing, the plaintiffs fail to articulate a clear duty to do issue the Consular Report of Birth Abroad or any other act requested in connection with the passport applications. Thus, the complaint fails to establish that an exercise of jurisdiction is appropriate under the federal mandamus statute.

### 4.     Review Under the 8 U.S.C. § 1503

The defendants note that 8 U.S.C. § 1503 allows a person who "claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency" to institute an action "for a judgment declaring him to be a national of the United States." 8 U.S.C. § 1503(a). The plaintiffs do not invoke § 1503 in their complaint, however, and it is not clear that relief under this statute is available. Even if the Court were to construe the complaint as one arising under 8 U.S.C. § 1503, this case would be subject to dismissal because the State Department has not yet adjudicated the plaintiffs' applications or issued a "final administrative denial," which is a prerequisite to

18

filing a declaratory judgment action. *Marcello v. Bowen*, 803 F.2d 851, 857 (5th Cir. 1986) (requiring a petitioner to first exhaust administrative remedies).

It is undisputed that the plaintiffs' applications for a Consular Report of Birth Abroad and the passport applications for M.E. and E.J. remain pending with State Department officials and that no final decision has been entered.  Because the applications remain unadjudicated, any complaint under 8 U.S.C. § 1503 is premature and must be dismissed for failure to exhaust available administrative remedies. *See Rubio v. Chertoff*, Civil No. H-08-1578, 2008 WL 4376563 (S.D. Tex. 2008) (noting that a "final administrative denial" is a prerequisite to a declaratory judgment action under 8 U.S.C. § 1503, and that a federal court will lack jurisdiction over such a claim until administrative remedies are exhausted) (citing *United States v. Breyer*, 41 F.3d 884, 891-92 (3d Cir. 1994)).

The plaintiffs do not propose any other valid basis for federal jurisdiction for purposes of bringing a claim under the Declaratory Judgment Act.  Accordingly, the plaintiffs' claims for declaratory relief must be dismissed for lack of subject matter jurisdiction.  Alternatively, the plaintiffs' complaint for declaratory relief fails to state a claim upon which relief can be granted as a matter law.

## C.     Plaintiffs' Claim for Monetary Damages

The plaintiffs also seek monetary damages from Lisa Mooty, who allegedly defamed Mary Joy by calling her a prostitute and suggesting that she engaged in criminal behavior. The defendants assert that the alleged remarks were made, if at all, during the course of Mooty's employment as a consular official at the United States Consulate in Manila.  The

19

defendants assert, therefore, that the plaintiffs' claims against Mooty are barred by the doctrine of sovereign immunity.

The plaintiffs' allegations against Mooty are construed as official capacity claims against the United States or the State Department as her employer.[6]  As sovereign, the United States is immune and cannot be sued without its express consent.  *See Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983) ("The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress."); *Ashford v. United States*, 511 F.3d 501, 504 (5th Cir. 2007) (explaining the doctrine of sovereign immunity and its derivation from the British legal fiction that "'the King can do no wrong'") (citation omitted).  Absent a waiver, sovereign immunity shields the United States and its agencies from suit.  *See Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994).  If no waiver of sovereign immunity applies, then the government is

---

[6]     The pleadings do not allege or show that Mooty took any action in this case outside of her official capacity as a consular officer.  The defendants maintain, nevertheless, that any attempt to sue Mooty in her individual capacity fails as a matter of law.  Such a claim would be actionable, if at all, under *Bivens*, which allows recovery of damages for constitutional violations by a federal official.  Defamation, however, is a state law claim.  *See Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 382 (Tex. 2005) (reciting the elements of a defamation claim under Texas law) (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).  It is well established that there is no constitutional right to be free from defamation.  *See Paul v. Davis*, 424 U.S. 693, 712 (1976) (recognizing that, while a State may protect against injury to reputation by virtue of its tort law, a person's reputation does not implicate a "liberty" or "property" interest of the sort protected by the Due Process Clause).  The complaint fails to state an actionable *Bivens* claim against Mooty in her individual capacity for this reason.  *See Sigert v. Gilley*, 500 U.S. 226, 234 (1991) (observing that, "so long as the damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens* action"); *see also Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996) (holding that "harm to reputation" is not a "constitutionally cognizable" injury for purposes of a *Bivens* claim).

immune from suit, and there is no subject matter jurisdiction to hear this case.  *See Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994) (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).

The plaintiffs do not allege or show that any of the named defendants have waived sovereign immunity in this instance, and the Court's research reveals no applicable waiver under these circumstances.  A limited waiver of sovereign immunity is found in the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, for injury or loss caused by the negligent or wrongful act of a government employee acting within the scope of his or her employment.[7]  Thus, the FTCA waives sovereign immunity and permits a suit for money damages against the United States for claims sounding in state tort law. *Freeman v. United States*, 556 F.3d 326, 335 (5th Cir. 2009) (citing *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 252 (5th Cir. 2006)).  There is no hint in the complaint, however, suggesting that the waiver found in the FTCA applies in this case.  Even if there were, there are numerous statutory exceptions that limit the circumstances under which individuals may bring suit under the FTCA.  *See Ashford*, 511 F.3d at 505.  Claims of defamation, such as those raised

---

[7]    The Federal Tort Claims Act (the "FTCA") operates as a waiver of the United States' sovereign immunity for certain tort actions for damages arising from:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

by the plaintiffs in this instance, are expressly excluded from the FTCA waiver.  28 U.S.C. § 2680(h).

More importantly, assuming that the FTCA were to apply, it is undisputed that the plaintiffs have failed to exhaust available administrative remedies for the purposes of making a claim for monetary damages within the limited waiver afforded by the FTCA.  28 U.S.C. § 2675(a).  The plaintiffs do not attempt to overcome any of the defendants' remaining arguments regarding the defamation claim.[8]  The Court concludes, therefore, that the complaint for damages against Mooty is also subject to dismissal for lack of jurisdiction. Alternatively, the Court concludes that the plaintiffs fail to state a claim upon which relief can be granted.


**D.     Plaintiffs' Claims for Injunctive Relief**

The plaintiffs have filed more than one motion seeking preliminary injunctive relief on the merits of their claims on an emergency basis.  Citing this Court's lack of jurisdiction, the defendants oppose these requests.

"To obtain a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the

---

[8]     The alleged defamation occurred, if at all, in the Philippines.  The defendants note that the FTCA specifically exempts any claim arising in a foreign country.  28 U.S.C. § 2680(k); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 707 (2004).

threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest." *Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005).   Emphasizing its extraordinary character, the Fifth Circuit has  cautioned that a preliminary injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements."  *PCI Transportation Inc. v. Fort Worth & Western Railroad Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (citations omitted).

For reasons outlined above, the plaintiffs have failed to establish that this Court has jurisdiction to consider their claims.  Alternatively, they have failed to demonstrate a valid claim for which relief can be granted.  On this record, the plaintiffs have failed to meet their burden to show that an injunction is warranted.  Therefore, the plaintiffs' motions for injunctive relief will be denied and the complaint in this case will be dismissed.


## IV.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.   The defendants' motion to dismiss (Doc. # 5) is **GRANTED**.

2.   This case is **DISMISSED** for lack of jurisdiction.  Alternatively, the plaintiffs' complaint is **DISMISSED** for failure to state a claim upon which relief can be granted.

3.   The plaintiffs' motions for a preliminary injunction and an evidentiary hearing (Doc. # 10, # 24) are **DENIED**.

23

4.      The Court notes that the plaintiffs have requested leave to submit exhibits, to file a response in excess of the page limit imposed by local rules, and to supplement their response to the defendants' motion.   The Court has considered all of the pleadings and exhibits in the record to date, including the plaintiffs' submissions.  To the extent that the plaintiffs' requests are not moot, all other pending motions (Doc. # 7, # 12, # 13) are **GRANTED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas on August 31st, 2009.

Nancy F. Atlas
United States District Judge